UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DIANE SINGLETON                                                      PLAINTIFF

VS.                                          CIVIL ACTION NO. 3:22-cv-00034-HTW-LGI

MADISON COUNTY; MADISON COUNTY
CITIZEN SERVICES AGENCY; and
CARLOS HENDERSON                                                    DEFENDANTS

**PLAINTIFF'S RESPONSE TO DEFENDANT**
**MADISON COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Diane Singleton, by and through counsel, responds to Defendant Madison

County's motion for summary judgment. [Dkt. No. 61.]

## I.  PLAINTIFF'S ALLEGATIONS

Defendant Henderson dated Plaintiff's daughter for approximately two years.

Complaint, Dkt. No. 1 at ¶ 11. Plaintiff's daughter ended the relationship with Defendant

Henderson. *Id.* After ending the relationship, Plaintiff's daughter had to obtain a court order to

prevent Defendant Henderson from contacting her further. *Id.* On or about January 2020,

Defendant Henderson came over to Plaintiff's home looking for Plaintiff's daughter.  *Id.*

Plaintiff told Defendant Henderson to leave and reminded him of the order preventing any

contact with her daughter. *Id.* Shortly after,  Defendant Henderson started shooting into

Plaintiff's home, striking her arm and legs. *Id.*

On November 3, 2020, the Madison Circuit Court sentenced Defendant Henderson to a

total of 40 years for one count of Aggravated Assault- Domestic Involvement, one count of

Aggravated Assault, and one count of Possession of a Firearm by Convicted Felon. *Id.* at ¶ 12.

On October 20, 2020, Plaintiff, who was in a wheelchair from her gunshot injuries, had scheduled the Madison Defendants to transport her to one of her treating physicians. *Id.* at ¶ 13. The driver of Defendant Madison County Citizen Services Agency's ("MCCSA") vehicle loaded Plaintiff into the vehicle and transported her to her doctor's appointment. *Id.* After her doctor's appointment, Defendant MCCSA's driver again loaded Plaintiff into the vehicle but failed to secure Plaintiff and her wheelchair properly. *Id.* at ¶ 14. Defendant MCCSA's driver also operated the vehicle at a high rate of speed over speed bumps, which he had known were present. *Id.* When the vehicle hit these speed bumps at a high rate of speed, with neither the Plaintiff nor her wheelchair being properly secured, Plaintiff was ejected from her wheelchair, breaking her leg. *Id.* While assisting Plaintiff, Defendant MCCSA's driver apologized profusely and called the ambulance to take Plaintiff to the hospital. *Id.*

The Madison Defendants violated the Mississippi Tort Claims Act when the driver of the MCCSA vehicle failed to secure Plaintiff properly by a seatbelt and shoulder harness, failed to secure her wheelchair properly, failed to operate the MCCSA vehicle in an ordinary and prudent manner, failed to operate the MCCSA vehicle in obeyance of all Mississippi laws, and failed to operate the MCCSA vehicle in a reasonable manner that would not have caused Plaintiff's injuries. *Id.* at ¶ 16.   The Madison Defendants also failed to supervise and train their employees in implementing the proper procedures for transporting Plaintiff. *Id.* at ¶ 17.

The Madison Defendants' policies of not securing Plaintiff by a seatbelt and shoulder harness, not securing Plaintiff's wheelchair, and not safely operating the MCCSA vehicle violated Plaintiff's due process rights under 42 U.S.C. 1983. *Id.* at ¶ 22.

In the alternative, the Madison Defendants failed to train its employees in following their procedures of properly securing Plaintiff on the MCCSA vehicle by a seatbelt and shoulder

harness, properly securing Plaintiff's wheelchair on the MCCSA vehicle, and operating the MCCSA vehicle in a safe and prudent manner. *Id.* at ¶ 23. Finally, the Madison Defendants' refusal to transport Plaintiff to her medical providers after her accident violated her due process rights. *Id.* at ¶ 24.

The Madison Defendants' refusal to transport Plaintiff to her medical providers after the accident constitutes a violation of the Rehabilitation Act and the American Disabilities Act ("ADA"). *Id.* at ¶ 27 & 32. The Madison Defendants further violated the ADA by failing to use a securement system to secure Plaintiff's wheelchair and also failed to restrain her by a seatbelt and shoulder harness. *Id.* at ¶ 30.

## II. POSTURAL PROCEDURE

Plaintiff filed this Complaint against Madison County, Madison County Citizens Services Agency ("MCCSA"), and Carlos Henderson for her injury. Dkt. No. 1. Defendant Madison County moved to dismiss this matter under Rule 12(b)(1) and 12(b)(6). Dkt. No. 19. This Court converted the motion to dismiss to a motion for summary judgment and denied the motion without prejudice. Order, Dkt. No. 54. This Court also granted Plaintiff's request for limited discovery on the following issues:

> "(a) the establishment of the MCSSA by Madison County;  (b) whether MCCSA is truly a separate entity from Madison County; (c) Madison County's involvement with the day-to-day operations of the MCCSA; (d) whether MCCSA implemented any procedures under the American with Disabilities Act and the Rehabilitation Act;  (e) whether MCCSA had in place any policies and procedures for denial of services to Madison County residents; and (f) what policies and procedures, if any, that MCCSA had for the training and supervision of MCSSA's employees.

*Id.*

### III. FACTS

A. **Madison County Citizens Service Agency**

MCCSA "provides human services with excellence to enhance self-sufficiency for the citizens of Madison County by partnering with other community agencies." MCCSA 0059. The Madison County Board of Supervisors established it in 2007 "to operate programs to improve the economic and social conditions of moderate to low income households." *Id.* Its goal is "to provide services and resources that will guide families to self-sufficiency" for the poor and vulnerable of Madison County.   *Id.*

### 1. **MCCSA's Manual**

MCCSA has an Employee Personnel Handbook approved by its Board of Directors on December 17, 2020. See Exhibit 1,  MCCSA 0056. However, Madison County's control over MCCSA is evidenced by the County's Board of Supervisors' emblem being on its cover. *Id.* This control is further evidenced by the multitude of references in the  MCCSA's manual to Madison County's policies and procedures. *Id.*

### a. **Vacation Leave**

MCCSA follows Madison County's Vacation Policy to determine how  MCCSA's employees accrue vacation time. *Id.* at MCCSA 0060. First, it requires an MCCSA employee to have "a regular schedule of 40 hours per workweek."  *Id.* Second, it dictates that if an MCCSA employee worked between one month and three years, then the MCCSA employee shall accrue vacation time of twelve hours a month for a total of eighteen days a year. *Id.* If an MCCSA employee works from thirty-seven months to eight years, then the employee accrues fourteen hours of vacation per month for a total of twenty-one days per year. *Id.* If an MCCSA employee works from 97 months to fifteen years, then the employee accrues 16 hours of vacation time a

month for a total of twenty-four days a year. Finally, if an MCCSA employee works for over fifteen years, they will earn eighteen hours a month for a total of twenty-seven days for the year. *Id.*

b.  **Sick Leave**

MCCSA adheres to Madison County's Sick leave policy. *Id.* at MCCSA 0061. MCCSA's handbook states that "[the] **County** provides paid sick leave as a benefit for eligible employees, which may be accrued and taken as set forth below. To be eligible, an employee must be officially full-time or part-time and meet the schedule requirements as set forth below." *Id.* (emphasis added).

MCCSA's employees begin "accruing sick leave time on the first day of the next calendar month after the employee's date of hire." *Id.* "Former **County** employees who are rehired more than 90 days after initial separation" will start earning sick leave as if they were a new employee. *Id.* (emphasis added). Any sick leave will "be prorated for a partial month of service, including the last month of employment." *Id.* An employee out on leave does not accrue sick time. *Id.* If "**County** employees who are PERS retirees are not eligible to accrue sick leave." *Id.* (emphasis added).

According to the County's rate, MCCSA's employees who have completed one month to three years accrue eight hours per month and twelve days per year. *Id.* (emphasis added). An employee that has been there for thirty-seven months to eight years accrues seven hours a month and ten and a half days annually. *Id.* An employee with ninety-seven months to fifteen years accrues six hours a month and nine days a year. *Id.* For any MCCSA employee with over fifteen years of service, the **County's** schedule gives them 5 hours monthly and seven and half days a year. *Id.* Eligible employees who work "at least 21 hours, but less than 40 hours" will earn sick

5

leave at the rate of four hours per month. *Id.* These hours requirements for "sick leave accrual eligibility are based solely on the **County's official classification**." *Id.* (emphasis added). "Upon separation from employment **with the County,** all accrued, unused sick leave hours will be credited to the employee's State retirement plan." *Id.* at MCCSA 0062 (emphasis added).

An MCCSA employee may use sick leave if the employee is "unable to perform his or her job duties due to illness or injury." *Id.* Sick leave can be "taken in full-day increments but may be taken in hourly increments with the prior approval of the employee's department head or elected official." *Id.* If an MCSSA employee is eligible for Worker's Compensation benefits, unused sick leave, according to Madison County's policy, "may be used to cover the time lost from work" until the employee becomes eligible for Workers' Compensation benefits. *Id.* The "official records for sick leave balances are maintained by the **County Payroll Department** and the **County Human Resources Department**." *Id.* (emphasis added).

### c.    Holiday Leave

MCCSA will "observe and comply with the holiday schedule in the *Madison County Employee Handbook."* MCCSA 0063. The "County normally observes" New Year's Day, President's Day, Dr. M.L.King, Jr./R.E. Lee Birthday, Good Friday, National Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, and Christmas. *Id.* Also, "the **Board of Supervisors, at its discretion, may recognize any other holidays"** for MCCSA. *Id.* (emphasis added).

### d.    FMLA  Leave

MCCSA "will observe *Madison County Employee Handbook* policies regarding FMLA leave." *Id.* The MCCSA manual states, "County employees may be entitled to leaves of absence under" FMLA. *Id.* For a MCCSA employee to be eligible for FMLA leave, they must

> "have been employed **by the County** for a total of at least 12 months, (ii) have been employed for at least 1,250 hours of service **with the County** during the previous 12-month period, and (iii) be employed at a worksite where at least 50 employees are employed **by the County** within 75 miles."

*Id.* (emphasis added). Also, it "is the intent of the **County** to fully comply with" the

FMLA. *Id.*

When the FMLA leave is foreseeable, the MCCSA employee must provide thirty

days' advance notice, or "**the County may deny the leave** until a thirty-day notice

period has expired." *Id.* at MCCSA 0064 (emphasis added).    "**The County will inform**

**employees if they are eligible under FMLA.**" *Id.* (emphasis added.)    "If **the County**

determines that the leave is not" eligible under the FMLA, then "the **County will notify**

**the employee and supply the reason for the ineligibility.**"  *Id.* (emphasis added). The

MCCSA employee must provide adequate documentation to determine if the leave is

under the scope of FMLA. *Id.* The employee's documentation "must be submitted to the

**County Human Resource Department** within fifteen day**s** of the employee's initial

request for leave."  *Id.* (emphasis added). Any medical-related certifications "must be

submitted on the appropriate forms, which may be obtained from the **County Human**

**Resources Department.**." *Id.* (emphasis added.)  If the employee fails to submit the

proper forms promptly, any time off will be considered unexcused, and the employee

"will be subject to the **County's normal attendance and discipline policies.**" *Id.* at

MCCSA 0064-65 (emphasis added.)  If an employee would like a request to be

considered under FMLA, they must have applicable certifications involving medical

conditions "which may be obtained in the **County Human Resource Department.**" *Id.*

at MCCSA 0065 (emphasis added.).   An employee on FMLA leave should "notify **the**

**County Human Resources Department** periodically … of the employee's status and

intention to return to work." *Id.* Employees "must make reasonable efforts to schedule leave for planned medical treatment so as not to unduly disrupt the **County's** operations." *Id.*

### e. Bereavement Leave

MCCSA observes Madison County's policies regarding Bereavement Leave. *Id.* at MCCSA 0070. An employee may be granted up to three days of excused time for the death of a member of the employee's immediate family. *Id.* The immediate family includes employees' parents, grandparents, spouse, sibling, child, stepchild, grandchild, or in-laws. *Id.* If additional time is required, then prior approval by the department head or elected official is required. *Id.*

### f. Jury Duty

MCCSA complies with Madison County's policies regarding jury duty. "The **County** will grant administrative time off with pay when a full-time or part-time employee is subpoenaed to appear, or is summoned to serve on a jury, in a state or federal court." *Id.* The employee will be paid for the "actual time spent in court or serving on jury duty during the employee's regularly-scheduled shift." *Id.*

### g. General Prohibited Conduct

MCCSA enforces Madison County's General Prohibited Conduct for its employees. *Id.* at MCCSA 0071. These activities include to (1) "Failure to abide by **County policies and practices**;" (2) "Theft of, or unauthorized disclosure of, **County** or other official documents, records, or information;" (3) "Falsification of work-related record or document;" (4) "Maliciously providing or attempting to provide false information or misrepresentations to the **County** or with regard to **County** business;" (5) "Being rude, discourteous or similar unprofessional behavior toward a co-worker;" (6) "Being insubordinate, threatening,

8

intimidating, disrespectful, or assaulting a manager, co-worker or others;" (7) "Threatening, intimidating, coercing, or adversely interfering with the job performance of fellow employees;" (8) "Threatening, harassing, … intimidating, profane, obscene, or similar inappropriate language;" (9) "Malicious, reckless, or knowingly false representations or accusations concerning **the County;"** (10) "Unauthorized disclosure of confidential or sensitive **County** or work-related information; (11) "Unsatisfactory job performance or failure to improve and maintain satisfactory performance;" (12) "Conviction of or involvement in a felony;" (13) "Sleeping or wasting time during working hours; (14) "Damage, destruction, or defacement of the **County's** or another's property;" (15) "Unauthorized or improper use of the County's postage or package delivery service, the **County's** long-distance services, or **County**-issued credit car or purchase card;" (16) "Violation of a safety rule or practice;" (17) "Leaving **County** premises" duing work without notice; (17) "Gambling on **County** property or by use of the **County's Information System;"** (18) "Soliciation of gifts, loans, favors, or gratuities from persons with whom the **County"** may conduct business; or (19) Repeated violations of these policies. *Id.* at MCCSA 0071-72 (emphasis added).

h.       **Conflict of Interest**

MCCSA adheres to Madison County's conflict of interest policy. *Id.* at MCCSA 0073. MCCSA's employees "have a responsibility to avoid any conflict between personal interest and those of the **County."** *Id.* (emphasis added).   "No act should be committed" that questions "the integrity of the **County**." *Id.* (emphasis added). Employees "should be especially careful to avoid using, or appearing to use an official position for personal gain or leverage." *Id.* Employees have "a responsibility to report any actual or potential conflict that may exist between employee and the **County."** *Id.* (emphasis added).

9

i.        **Dress Code**

MCCSA's employees must abide by Madison County's Dress and Personal Appearance

policy. *Id.* at MCCSA 0077. Employees "should dress in a manner that presents a business-like

image." *Id.* The policy even details the types of slacks an employee should wear;  that

undergarments should be covered; no tight or revealing clothing;  no spandex, leggings, stretch

pants, shorts, or t-shirts;  no sandals or flip-flops; or no logos or graphics that display offensive

or abusive behavior. *Id.*

j.        **Cellular Phone**

MCCSA's employees must abide by Madison County's policy regarding Information and

Media. MCCSA 0079. The use of "Information Systems, such as **County** landline telephone and

cell phones, computers (including the Internet), and other devices, for personal reasons should be

kept to a minimum." *Id.* at MCCSA 0079 (emphasis added). "Excessive personal use, as

determined by the **County**, is prohibited." *Id.* (emphasis added).   Emails to groups of

employees "should be limited to **County's** business-related matters." *Id.* (emphasis added).   The

County's policy on cell phones dictates that the phones should be turned off or on silent. *Id.*

atMCCSA 0080. Employees are responsible for using and caring for all electronic devices

"owned or otherwise provided by the County." *Id.*

k.        **Use of County Property**

As established by Madison County's policy, MCCSA's employees could not use its buses

or vans for personal use.   *Id.* at MCCSA 0082. Employees are prohibited from "using or

allowing the use of property" provided by the County for any purpose other than "official work-

related activities." *Id.* at MCCSA 0082-83.  If "the department head, elected official or **County**

**Administrator"** establishes that an employee has stolen property, it is grounds for immediate termination and possible criminal action. *Id.* at MCCSA 0083 (emphasis added).

### l.    **Americans with Disabilities Act and Rehabilitation Act**

MCCSA follows Madison County's policies regarding the Americans with Disabilities Act and the Rehabilitation Act.   See Exhibit 2, MCCSA's Response to Interrogatory No. 9. and Exhibit 1 at MCCSA 0110.   MCCSA uses the Madison County Handbook to ensure this compliance. *Id.*   Madison County's policy is "not to discriminate against qualified individuals with disabilities regarding the application procedure, hiring, advancement, discharge, compensation, training or other terms, conditions, and privileges of employment."  *Id.* No reference is made to the transportation of people with disabilities in Madison County's policy.

### III. ARGUMENT

### A.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has made its required showing, Rule 56(c)(1) further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse  party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1). Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; see *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

## B.   THERE IS A DISPUTE OF MATERIAL FACT WHETHER MADISON COUNTY  AND MCCSA ARE TWO SEPARATE ENTITIES

Under a Rule 56 analysis, Plaintiff has presented a dispute of material fact on whether Madison County and MCCSA are two separate entities. As Plaintiff has articulated previously, *Brown v. Thompson*, 927 So.2d 733, 738 (Miss. 2006) instructs this Court to examine the "structural relationship" to determine if an entity is a separate legal entity for MTCA purposes. *Id.* at  737. In determining that the Sheriff's Department was not a separate entity from Bolivar County, the *Brown* court observed that the "money flows from the county" because the county approved the budget of the Sheriff's Department, increased or decreased the budget, and provided insurance for the Sheriff's Department. *Id.*

The lessons of *Brown* instruct this Court to deny the motion. Plaintiff has already established that Madison County allocates $629,500.00 to MCCSA's annual budget; See Madison County's Affidavit of Na'Son White, Dkt. No. 19-2, p. 2, ¶ 7, it assigns vehicles to MCCSA; See Exhibit 3, Minutes of Board of Supervisors of Madison County dated February 20, 2007, p. 2; its Human Resource Agency and County Administrator advertised for the open MCCSA's Executive Director position, See Exhibit 4, Minutes of Board of Supervisors of Madison County dated December 18, 2006, p.5, its attorney prepared a lease for MCCSA, See Exhibit 5, Minutes of Board of Supervisors of Madison County dated March 20, 2017, p. 6; and it approved MCCSA's intent to seek funding, See Exhibit 6, February 19, 2019, p. 5.

For this Rule 56 motion, Plaintiff establishes that Madison County provided MCCSA with its Employee Personnel Handbook and its Handbook. These two actions provide a dispute

of material fact that Madison County knew or should have known that MCCSA was following its policies on Vacation Leave, Sick Leave, Holiday Leave, FMLA  Leave, Bereavement Leave, Jury Duty, General Prohibited Conduct, Conflict of Interest, Dress Code, Cellular Phones, Use of County Property, the Americans with Disabilities Act and the Rehabilitation Act. The fact that MCCSA complies with so many of Madison County's policies creates a dispute of material fact that Madison County and MCCSA are not two separate entities.

## PLAINTIFF HAS ESTABLISHED A QUESTION OF
## FACT FOR MADISON COUNTY FOR HER FEDERAL CLAIMS

In the alternative, if this Court does determine that Madison County and MCCSA are two separate entities under a "structural relationship" analysis, Plaintiff has established a dispute of material fact that Madison County knew or should have known that its policies or lack of policies of not securing Plaintiff by a seatbelt and shoulder harness, not securing Plaintiff's wheelchair, and not safely operating the MCCSA vehicle violated  Section 1983, the ADA and the Rehabilitation Act.   The Supreme Court held that municipalities and other local government entities are included among those persons to whom § 1983 applies. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Municipal liability requires proof of three elements: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.' " *Valle v. City of Houston,* 613 F.3d 536, 541-42 (5th Cir. 2010)).

Here, Madison County's lack of a proper policy in transporting its citizens with disabilities was the moving force behind Plaintiff's injury. Plaintiff has proven that Madison County provided two handbooks to MCCSA so MCCSA could follow twelve different Madison County policies establishes the Madison County knew or show have known its lack of a policy

13

regarding transporting disabled citizens caused Plaintiff's injury. Thus,  Plaintiff has created a question of fact regarding her Section 1983 claim, her ADA claim, and her Rehabilitation Act claim for Madison County.

## IV. CONCLUSION

For the above-stated reasons, Plaintiff prays that this Court denies Madison County's motion for summary judgment.

Respectfully submitted on October 10, 2023.

By:   *Brent Hazzard*
Brent Hazzard, MSB #99721
Emily Bradley, MSB #104523
Schwartz & Associates, P.A.
162 East Amite Street
Jackson, Mississippi 39201
T: (601) 988-8888
F: (601) 949-7929
bhazzard@1call.org
ebradley@1call.org